Fish *v.* Dodge.

---

## FISH *vs.* CATHARINE DODGE.

If one carry on a lawful business in such a manner as to prove a nuisance to his neighbor, he is answerable for the damages.

To entitle the plaintiff to an action, in such a case, it is not necessary that he should be driven from his dwelling: it is enough that the enjoyment of life and property be rendered uncomfortable.

Therefore, where one carries on the business of finishing steam boilers in the compact part of a city, whereby the occupant of an adjoining dwelling is annoyed by the noise and dust, such occupant may maintain an action on the case against the manufacturer.

One who erects a nuisance on land is liable for the continuance of it, though he has demised the premises to another. *Per* BRONSON, C. J.

Fish *v.* Dodge.

So he is liable, while the nuisance continues, though he erected it on the land of another, upon which he cannot enter to remove it. *Per* BRONSON. C. J.

One who demises premises, for carrying on a business necessarily injurious to the adjacent proprietors, is liable as the author of the nuisance.

But where the letting is for a lawful purpose which can become injurious only under special circumstances, the lessor will not be liable unless he knew or had reason to believe that the business would be so conducted as to render it a nuisance.

On ascertaining the injury caused by an alleged nuisance a witness cannot be allowed to give his opinion as to the amount of the damages.

A plaintiff cannot recover more damages than he has claimed in his declaration; and the rule is the same where a cause is tried in the common pleas on appeal from a justice's court.

ERROR to Albany C. P. Dodge sued Fish in the Albany justices' court, and declared in a special action on the case for a nuisance, for that the defendant by manufacturing steam engine boilers adjoining the dwelling house of the plaintiff in Beaver-street in the city of Albany, created a great noise and dust, whereby the plaintiff was injured in her property and peaceable enjoyment of her said dwelling, and whereby her boarders were forced to leave her—the said plaintiff, then and there keeping a boarding house; to the damage of the plaintiff of one hundred dollars. The defendant pleaded the general issue; and there was a verdict and judgment for the plaintiff for $100 damages. The defendant appealed. On the trial in the C. P. it appeared, that in the years 1844 and 1845 the plaintiff kept a boarding house on the north side of Beaver-street in the city of Albany.· The defendant was a blacksmith, and carried on his business in a building west of, and adjoining the plaintiff's house. On the 1st of May, 1845, the defendant rented the east end of his building or shop, being the end adjoining the plaintiff's house, to the firm of Jagger, Treadwell & Perry, until the 1st of September following at a fixed rent, with the understanding that they might occupy longer in case they should find it necessary, and might, if necessary, occupy a larger portion of the shop than was first agreed upon, paying reasonably therefor. Messrs. Jagger & Co. told the defendant, when they hired the premises, that they wanted to finish steam boilers there. They occupied the premises from the 1st of May until

Fish v. Dodge.

October following, and paid to the defendant $70 or $75 for rent. The defendant carried on his business in the shop at the same time. The steam boilers were made by the workmen of Jagger & Co., and for their use—the defendant having no interest in them. There was no partition in the shop, and the hands of Jagger & Co. could go where they pleased. One of them sometimes worked at the same fire with the defendant. The defendant kept the key of the shop.

In manufacturing the steam engine boilers there was a tremendous noise and pounding, commencing about six o'clock in the morning, and continuing until sun down. Immense quantities of dust arose from the work in the shop, which penetrated the plaintiff's house, settled upon the curtains and furniture, and filled the air of the house, making it difficult to breathe. It prevented the opening of windows, and deprived the plaintiff of the use of the yard for drying clothes. In July the plaintiff complained to the defendant of the nuisance: the defendant answered that it would not last much longer, but would be stopped soon. It continued from the 1st of May until October. In consequence of the noise and dust the plaintiff lost several of her boarders. The plaintiff was not annoyed by the business carried on by the defendant; but only by the work upon the boilers.

After proving by Sarah Freleigh the injury complained of, the plaintiff asked her, what in her opinion was the amount of damage. The defendant objected to the question; but the court overruled the objection, and the defendant excepted. The witness answered, that the damage could not have been much less than $100 on account of boarders, and $100 more on account of the dust, inconvenience, and routine of expenses. On cross-examination she said that in her testimony on a former trial of the cause she estimated the damage from dust, labor, smut, &c. at $50.

A motion was made for a nonsuit on the grounds, 1. There was no proof that the defendant had done or caused to be done any thing which was a nuisance, or for which he was liable; 2. If the defendant was liable on the facts proved, the decla-

ration—charging that the defendant by manufacturing boilers created the noise and dust—did not meet the case proved, and the plaintiff could not recover under the pleadings. The courr overruled the motion, and held the defendant liable. Exception

The court charged the jury, that though the business of manufacturing steam boilers was not a nuisance or in any way illegal, it might become such either by the manner of conducting it, or by locating the scene of its great noise, dust and smoke in the immediate vicinity of, or in contact with a dwelling house in the heart of a city or elsewhere: that what was done in this case to the annoyance of the plaintiff was a nuisance; and if the jury believed from the evidence that the defendant let the premises to Jagger & Co. with knowledge of the purpose, and for the purpose of manufacturing and repairing steam boilers; and if they believed that the plaintiff sustained damages by the manufacturing of the boilers in this case, she was entitled to a verdict for all actual damages: and the jury could find more than $100, the amount stated in the declaration. Exception.

The defendant requested the court to charge, 1. That under the pleadings the defendant is not liable unless he manufactured the boilers, or caused them to be made for his benefit, or by his direction, or in his business. 2. That the nuisance complained of is the doing of a lawful, and not necessarily offensive business, in a noisy and dusty manner, and that for such an injury the landlord or owner of the premises is not liable. 3. That neither the act complained of, nor its consequences constitute a nuisance for which an action can be sustained. The court refused so to charge, and the defendant excepted. The jury found a verdict for the plaintiff for $150 damages, for which sum, and costs to $54,66, judgment was rendered. The defendant brings error

*C. M. Jenkins*, for the plaintiff in error. 1. The defendant below was not liable for the unlawful acts of his lessees. The shop was let for a lawful business; and if that business, lawful in itself, was carried on in such a manner as to become a nui-

sance, the actual offender is alone liable. The court in its charge erroneously assumed that manufacturing steam boilers was, under all circumstances, a nuisance. (*Stephens' N. P.* 2366; *Brockway.* v. *The People*, 2 *Hill*, 558.) 2. But if the defendant is liable on the case proved, that case should have been stated in the declaration; instead of which the defendant is charged as the party carrying on the business of manufacturing the steam boilers. 3. It was erroneous to permit the witness to give her opinion as to the amount of damages. (*Norman* v. *Wells*, 17 *Wend.* 136.) 4. The plaintiff could not recover a larger amount of damages than was claimed in the declaration, and the charge in that particular was erroneous; and that error also appears on the record independently of the bill of exceptions. (2 *W. Black.* 1300; 1 *Bulst.* 49; *Dox* v. *Dey*, 3 *Wend.* 356, 362.)

*S. H. Hammond*, for the defendant in error. 1. No prejudice could arise to the defendant from allowing a witness whose situation peculiarly qualified her to judge, to estimate the amount of damages. 2. There was no variance. If the defendant was liable it was on the ground that the injury was committed by him through the agency of another. 3. In cases tried in the common pleas, by appeal, the plaintiff may recover an amount beyond the jurisdiction of the justice, which necessarily shows that he may recover more than is claimed in the declaration. (*Jackson* v. *Covert*, 5 *Wend.* 139.) 4. The defendant was liable under the circumstances of the case, and the charge was correct. Where a nuisance is maintained by a tenant the lessor is liable. (*Rosewell* v. *Prior*, 2 *Salk.* 460; *Selw. N. P. by Wheaton*, 1140; *Christian Smith's case*, *Sir W. Jones*, 272; *Leslie* v. *Pounds*, 4 *Taunt.* 649.) So one is liable for a nui sance erected on his land, though the wrongdoer was not his servant. (*Bush* v. *Steinman*, 1 *Bos. & Pull.* 404; *Staple* v *Spring*, 10 *Mass.* 72.) So also if premises are let for the purpose of carrying on a business which is or which becomes a nuisance. (*The People* v. *Townsend*, 3 *Hill*, 479; *Commonwealth* v. *Harrington*, 3 *Pick.* 26.)

*By the Court,* BRONSON, Ch. J.   It is a rule of the common law that a man should so use his own as not to hurt another; and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages.   There are many cases in the books where this doctrine has been applied; and among the number are those where a man erects a smith's-forge, swine-sty, lime-kiln, privy, or tallow-furnace so near the dwelling-house of another as to render it unfit for habitation. (*Bradley* v. *Gill, Lutw.* 29; *Aldred's case,* 9 *Coke,* 58; *Jones* v. *Powell, Hutton,* 135; *Morley* v. *Pragnell, Cro. Car.* 510.)   It is not necessary to a right of action that the owner should have been driven from his dwelling: it is enough that the enjoyment of life and property has been rendered uncomfortable. (*Per Lord Mansfield, in Rex* v. *White,* 1 *Burr.* 337.)   Although the manufacturing of steam engine boilers is a lawful business, it was carried on in such a manner in this case as to make it a great annoyance to the plaintiff; and she is undoubtedly entitled to redress by action.   If the suit had been against Messrs. Jagger & Co., the immediate actors in the wrong, the right to recover would have been quite clear.   But whether the defendant is liable is a more difficult question.

It is said that the defendant is liable, because he was the owner of the shop in which the wrong was done; and we are referred to the case of *Bush* v. *Steinman,* (1 *B. & P.* 404,) where the owner of a house, who had contracted with a surveyor to put it in repair for a stipulated sum of money, was held answerable to a third person who had suffered an injury in consequence of the improper act of one of the workmen in making the repairs, although the workman was neither the servant, nor under the control of the owner of the house.   That case has been seriously, and I am inclined to think, justly questioned in England. (*Laugher* v. *Pointer,* (5 *B. & C.* 547.) (*a*) But it is not now necessary to inquire whether it can be sup-

---

(*a*) See *The Mayor, &c. of New-York* v. *Bailey,* (2 *Denio,* 433, 443, 446,) per Walworth, Chancellor, and Hand, senator.

Fish *v.* Dodge.

ported ; for there was not there, as there was here, a tenant in possession of the property ; and the repairs were made by, and for the immediate benefit of the owner. When one erects a nuisance, he is answerable for the continuance of it, as well as for the original wrong. And this is so not only where he has demised the property to another with the nuisance upon it, and reserved a rent ; (*Rosewell* v. *Prior*, 12 *Mod.* 635, 1 *Ld. Ray.*, 713, *and* 2 *Salk.* 460, *S. C.*,) but where the erection was made upon the land of another, and he has no right to enter for the purpose of removing it. (*Thompson* v. *Gibson*, 7 *Meeson &amp; Welsby*, 456.) The continuance is a new nuisance ; (*per Sewall, J., in Staple* v. *Spring*, 10 *Mass.* 74.) And the party cannot excuse himself by saying it is not in his power to redress the wrong. He must find out some way of putting an end to the injury. But none of the cases go far enough to aid the plaintiff, unless the defendant can be regarded as the author of the nuisance. He did not manufacture the engine boilers, nor were they made for him. But the jury have found that he let the shop for the purpose of having the boilers manufactured there ; and if he knew that it would prove a nuisance to the plaintiff, I think the action may be sustained. One who demises his property for the purpose of having it used in such a way as must prove offensive to others, may himself be treated as the author of the mischief. We held at the last term, that a man who had rented a tenement for the purpose of having it kept as a bawdy house, and derived an increased rent from that mode of using the property, might be indicted and punished for keeping the house. (*The People* v. *Erwin*, *ante, p.* 129.) We think this both good law and good morals. In that case, however, the letting was for a purpose unlawful and wicked in itself, while here the thing to be done was in itself both innocent and lawful. It could only become a nuisance under special circumstances. For that reason I think the instruction to the jury should have been modified by the additional inquiry, whether, from the nature of the business or otherwise, the defendant knew, or had reason to believe, that the making of steam engine boilers in his shop would be likely

Fish *v.* Dodge.

to prove injurious to the plaintiff. The defendant had carriec. on his business as a blacksmith in the shop, without any annoyance to the plaintiff; and· he may have supposed that the making of the boilers would prove equally inoffensive. He cannot be justly charged with the wrong which was actually committed by others, who were not in his employment, unless he knew, or had reason to believe, that he was letting the property for a use which must prove injurious to the plaintiff.

It was clearly wrong to allow the witness to express an opinion as to the amount of damage. (*Norman* v. *Wells,* 17 *Wend.* 136, 161.) It was the business of the witness to state facts; and of the jury to assess the damages.

The jury assessed the damages at a sum beyond the amount laid in the declaration; and the plaintiff, instead of remitting the excess, as should have been done, and taking judgment for the residue, has entered a judgment for the whole amount of damages found by the jury. This is error. (*Curtiss* v. *Lawrence,* 17 *John.* 111; *Dox* v. *Dey,* 3 *Wend.* 356; *Hoblins* v. *Kimble,* 1 *Bulst.* 49; *Cheveley* v. *Morris,* 2 *W. Black.* 1300; 1 *Chit. Pl.* 372, *ed. of '37.*) The plaintiff relies on the case of *Jackson* v. *Covert,* (5 *Wend.* 139,) but it does not touch the question. The point discussed there, though not necessarily decided, was, whether on appeal by the defendant from the judgment of a justice, the common pleas can give judgment for a sum exceeding the jurisdiction of the justice's court. Not a word was said about a judgment for damages beyond the amount laid in the declaration; and clearly the court did not intend to depart from the settled law on that subject.

Judgment reversed.