JOSEPH WASILEWSKI, PLAINTIFF-RESPONDENT, v. McGUIRE ART SHOP, DEFENDANT, AND F. & F. REALTY COMPANY, DEFENDANT-APPELLANT.

Submitted May 15, 1936—Decided October 9, 1936.

Before Justices BODINE and HEHER.

For the appellant, *Irving L. Werksman.*

For the respondent, *Aaron Heller.*

The opinion of the court was delivered by

HEHER, J. On November 26th, 1935, as the plaintiff, a pedestrian, was crossing cellars doors laid in the sidewalk abutting a building situate on Lexington avenue, in the city of Passaic, owned by the defendant, F. & F. Realty Company (hereinafter referred to as the landlord), and tenanted by its co-defendant, McGuire Art Shop (to be referred to as the tenant), one of the doors was without warning violently thrust upward through force exerted underneath by a servant of the tenant, whose less vigorous efforts had been unavailing, and plaintiff was thrown to the sidewalk, thereby suffering the injuries made the basis of this action.

The District Court judge, sitting without a jury, found for the plaintiff against both defendants, and the landlord appeals. It is said there was error in the denials of the motions to nonsuit and direct a verdict in its favor on the asserted ground of an utter lack of evidence of an actionable breach of a duty owing by it to the plaintiff under the circumstances.

The point is well made. The gravamen of the pleaded cause of action and the trial theory were that, inasmuch as

the cellar was also rented to the tenant, and there were no other means of ingress and egress, the landlord was guilty of maintaining a nuisance at the time of the letting, and throughout the term to the day of the mishap, in that the cellar doors were not equipped with "a proper locking device or protective guard," to safeguard pedestrians when the doors were raised from underneath. More specifically, it is maintained that it was the landlord's duty to equip the doors with a cross bar or brace designed to hold them, while so used, in a perpendicular position, or an electric hoist automatically providing a guard to pedestrians, and that this lack constituted a defect essentially structural in character.

The entire store premises were rented to the tenant exclusively, and the tenant undertook to make repairs. Although the lease does not specify the cellar as part of the demise, it seems to be conceded that it was included in the letting. No measure of control was reserved by the landlord, except the mere privilege of entry for the making of repairs in the event of the tenant's default; and no other tenant of the building had access to the cellar.

The cellar doors were of steel; and there was no evidence of a structural defect or faulty construction, unless the failure to use one of the mentioned appliances brings them within one of these categories.

In these circumstances, the only valid basis for imposing liability on the landlord is that he created and continued a public nuisance during the term, i. e., a condition which menaced the safety of pedestrians on the highway. *Durant* v. *Palmer,* 29 *N. J. L.* 544; *Houston* v. *Traphagen,* 47 *Id.* 23; *Weller* v. *McCormick,* 52 *Id.* 470; *Sutphen* v. *Hedden,* 67 *Id.* 324; *Meyers* v. *Birch,* 59 *Id.* 238; *Handlon* v. *Copestone Temple Association,* 106 *Id.* 362; *Garvey* v. *Public Service Co-ordinated Transport,* 115 *Id.* 280.

The general rule, in this country and in England, is that the landlord's liability to strangers is confined to the injurious consequences of that which in its very essence and nature is a nuisance at the time of the letting, and does not extend to that which is merely capable of being thereafter rendered a nuisance by the tenant. The ground of liability is that he is

the "author of the mischief;" he has, by the letting, put it in the power of the tenant to continue the nuisance and so has affirmed and become a party to its continuance, and is therefore classed as a tort feasor in respect of a stranger who suffers injury therefrom. But it is a corollary of this principle that where, under ordinary circumstances, a nuisance necessarily ensues from the plainly contemplated manner of use of the thing demised, and is not to be avoided by the tenant's exercise of reasonable care, the landlord is liable for the resulting injury; he is not responsible for the tenant's negligence where the premises are capable of the designed use free from danger to strangers. *Ingwersen* v. *Rankin,* 47 *N. J. L.* 18; *Dalay* v. *Rice,* 145 *Mass.* 38; 12 *N. E. Rep.* 841; *Stone* v. *Lewis,* 215 *Mass.* 594; 104 *N. E. Rep.* 284; *McCarthy* v. *York County Savings Bank,* 74 *Me.* 315; *Simonton* v. *Loring,* 68 *Id.* 164; *House* v. *Metcalf,* 27 *Conn.* 631; *Ditchett* v. *Railroad Co.,* 67 *N. Y.* 425; *Fish* v. *Dodge,* 4 *Denio* 311; *Pickard* v. *Collins,* 23 *Barb.* 444, 460; *Gandy* v. *Jubber,* 5 *Best & S.* 78; same case on error, *Id.* 486; see, also, 9 *Id.* 15; *Rex* v. *Pedley,* 1 *Ad. & El.* 822. In fine, the nuisance, to borrow the language of Blackburn, Judge, in *Gandy* v. *Jubber, supra,* "must be a normal one; not such for instance as a cellar with a flap, which may be or not a nuisance, according as it is carefully closed or improperly left open." As was said in *Fish* v. *Dodge, supra,* when the letting is for a lawful purpose which may result in a nuisance only under special circumstances, the landowner "cannot be justly charged with the wrong which was actually committed by others, who were not in his employment, unless he knew, or had reason to believe, that he was letting the property for a use which *must* prove injurious to the plaintiff."

Where a nuisance materializes as the inevitable consequence of the contemplated use, the landlord is considered an aider and abettor in its creation, and therefore a participant in the commission of the tort, and is liable as a principal tort feasor.

There was no evidence tending to show that the cellar doors, so constructed, constituted a nuisance *per se.* They were not in any sense a dangerous obstruction in the highway. They

did not, in whole or in part, project above the sidewalk, or otherwise menace the safety of pedestrians.

Nor was the injury suffered by respondent the necessary consequence of the use of the doors in the manner contemplated. It was primarily the result of the tenant's negligence. The tenant understood full well the requirements of safety in such use of the cellarway; there was no concealed danger. The failure to equip the doors with either of the devices mentioned did not make of them a nuisance chargeable to the landlord. Manifestly, there were other and equally effective means available to the tenant for the safeguarding of pedestrians while the cellarway was in use. In fact, so far as the state of the case discloses, an electric hoist without more might quite conceivably result in the same character of mishap. There is no ground of liability in respect of the landlord merely because the doors were capable of a negligent use by the lessee during the term. Where there is an alternative course consistent with the exercise of due care, a negligent use is certainly not classable as within the plan and purpose of the parties. Ordinarily, the landlord may justly assume a non-negligent use of the premises. It is not incumbent upon him, as a protection against the tenant's negligence, to equip the premises with the latest improvements in safety appliances. He is not an insurer against the tenant's negligence, nor is he bound to so construct or equip his building "as to reduce the possibility of damage from such negligence to an absolute minimum." *McCarthy* v. *York County Savings Bank, supra.*

And so, the instant case is distinguishable from *Dashine* v. *Peres,* 10 *N. J. Mis. R.* 1264. There a nine-year-old child opened an unlocked cellar door, resulting in injury to the child's mother, a stranger to the landlord; and the *ratio decidendi* of that case is that the absence of a lock might well be considered a structural defect, in that it was "within reasonable apprehension that a child or other irresponsible person would open the unsecured doors, with consequent injury to a pedestrian lawfully using the highway." Moreover, the landlord was also the occupant of a ground-floor store adjoining the cellarway, and as such retained a measure of control

over it, and was therefore charged with the duty of reasonable care in respect of its maintenance. Compare *Muller* v. *Baskowitz*, 10 *N. J. Mis. R.* 4. See, also, *Arnold* v. *Dlugo*, 110 *N. J. L.* 89.

The judgment is accordingly reversed, as to appellant, and the cause remanded for further proceedings conformably to this opinion.