37 N.J. Super. 13 (1955)
116 A.2d 805
PARK LUMBER AND SUPPLY COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND VILLAGE OF RIDGEFIELD PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
MARINO IOMMETTI, ANTHONY IOMMETTI, CHESTER IOMMETTI AND POPEO IOMMETTI, INDIVIDUALLY AND AS PARTNERS TRADING UNDER THE NAME OF M. IOMMETTI & SONS, DEFENDANTS, AND HACKENSACK BRICK CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 16, 1955.
*14 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. William R. Morrison argued the cause for the plaintiffs-appellants (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Gerald E. Monaghan, of counsel).
*15 Mr. Walter W. Gehringer argued the cause for the defendant-respondent (Messrs. Winne & Banta, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
On a motion for summary judgment, the plaintiffs' complaint against the Hackensack Brick Co. was dismissed for the reason that it failed to set forth a cause of action upon which relief could be granted. The plaintiffs appeal.
The defendant Hackensack Brick Co. had leased two tracts of land under written agreements made in December 1949 and October 1951 to the defendant M. Iommetti & Sons, for use as a garbage dump. On February 27, 1953 the building, lumber and other materials of the plaintiff which occupied premises adjoining the dump area were destroyed by a fire which spread from the dump. The plaintiffs seek damages. The Hackensack Brick Co. denies that the damage was the result of any act attributable to it, but rather of the negligence of its tenant.
The Hackensack Brick Co. moved for summary judgment on the ground that there was no genuine issue as to any material fact. The trial court held "the use for which the premises were leased does not necessarily create or result in the creation of a nuisance. The complaint does not allege that the Hackensack Brick Co. itself is guilty of any negligence in the operation of the dump. It, therefore, follows that, under the allegations of the complaint, the Hackensack Brick Co. is not responsible for the injury to the property of the plaintiffs."
The plaintiffs were granted leave to file an amended complaint, which recites that on February 27, 1953, the day of the damage, the Hackensack Brick Co. was the owner and lessor of premises "to be used and occupied by M. Iommetti & Sons for the purpose of disposal and dumping of garbage, ashes and refuse, having full knowledge at the time that said usage was likely to become a nuisance to the surrounding residential and business community." Further, that the lessor had the right of re-entry should the tenant by failure *16 to supervise the condition of the premises create and maintain a nuisance. The amended complaint further alleges that the tenant operated the dump in a dangerous and negligent manner, thereby creating and maintaining a nuisance, and that the lessor, Hackensack Brick Co., having full knowledge of such nuisance, failed in its duty to re-enter the premises or "to take any action to abate, correct, remedy or prohibit the existing dangerous and negligent operation of" the dump.
On the basis of the amended complaint, the trial court reconsidered and granted the defendant's motion for summary judgment.
The appellants now argue that under certain conditions a landlord may be liable for a nuisance created on leased premises, and that summary judgment should not be granted where there is a single material factual issue. They further argue that since the premises were leased "for the purpose of disposal and dumping of garbage, ashes and refuse, having full knowledge at that time that said usage was likely to become a nuisance to the surrounding residential and business community," the landlord is liable for the result, notwithstanding that no nuisance existed at the commencement of the lease.
Mr. Justice Heher stated the general rule in Wasilewski v. McGuire Art Shop, 117 N.J.L. 264 (Sup. Ct. 1936):
"* * * the landlord's liability to strangers is confined to the injurious consequences of that which in its very essence and nature is a nuisance at the time of the letting, and does not extend to that which is merely capable of being thereafter rendered a nuisance by the tenant. * * * where, under ordinary circumstances, a nuisance necessarily ensues from the plainly contemplated manner of use of the thing demised, and is not to be avoided by the tenant's exercise of reasonable care, the landlord is liable for the resulting injury; * * *. As was said in Fish v. Dodge, supra [4 Denio 311] when the letting is for a lawful purpose which may result in a nuisance only under special circumstances, the landowner `cannot be justly charged with the wrong which was actually committed by others, * * * unless he knew, or had reason to believe, that he was letting the property for a use which must prove injurious to the plaintiff.'"
*17 Cf. Ingwersen v. Rankin, 47 N.J.L. 18 (Sup. Ct. 1885); Annotation 53 A.L.R. 327; 2 Stevenson, Law of Negligence in the Atlantic States, §§ 499, 500; Prosser, on Torts, § 81, p. 648.
The appellants rely upon Benton v. Kernan, 127 N.J. Eq. 434 (Ch. 1940), modified 130 N.J. Eq. 193 (E. & A. 1941), but that case is clearly distinguishable from the instant matter. There the lessor leased premises for operation as a trap-rock quarry, which operation by its very nature required blasting with high explosives and crushing the stone so excavated. The resulting noise and concussion rocked houses, cracked walls, terrified the neighborhood and generally disturbed the peace and quiet of the community, thereby constituting of necessity a nuisance which could not be abated regardless of the manner of operation of such a business. As the trial court said, 127 N.J. Eq., at page 465:
"This is not a case where a landlord leases property for a general use, and the tenant creates a nuisance thereon. * * * The nuisance is the direct result of the agreed use of the land. * * * Where the owner leases premises with an already existing nuisance or for a purpose, the necessary result of which is a nuisance, and receives rent for them, then whether in or out of possession he is liable."
Moreover, it is significant that in the Benton case the premises were expressly leased for quarry purposes  indeed, there was provision for royalties to be paid to the lessor based on all stone quarried from the demised premises. Furthermore, the evidence disclosed that the quarry had been operated as a nuisance prior to its lease to the defendant, which lease was subsequently renewed with the already existing nuisance thereon, for which the owners became liable. Here the alleged nuisance did not result in damage to the plaintiff until after the execution of the leases by the defendant Hackensack Brick Co.
The appellants do not contend that a dumping ground is a nuisance per se. The amended complaint merely alleges that a nuisance was created by the tenant's negligent operation of the business, which it charges the lessor should have *18 anticipated and, therefore, was under a duty to abate the condition when it arose.
The leases themselves, which were before the trial court on answers to interrogatories, conclusively negate any charge of cooperation by the lessor in the creation or maintenance of a nuisance; they expressly provide that "the tenant must at all times supervise the condition of said premises and the uses thereof by said tenant, or by others, so that no nuisances * * * may be created, or maintained." Further, the charge that the landlord, having reserved the right of re-entry in the event of a default in the terms of the leases, was under a duty to abate the nuisance or become liable therefor, is without merit. The provision for re-entry in case of a breach of covenant was not for the benefit of the plaintiffs, but was for the protection of the landlord; and no duty flowed from the landlord to the plaintiffs to re-enter and abate the nuisance. Trondle v. Ward, 129 N.J.L. 179 (E. & A. 1942); Wright v. A.J.M. Holding Co., 130 N.J.L. 239 (Sup. Ct. 1943); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593 (App. Div. 1955).
Moreover, the fact that the landlord did not re-enter and abate the nuisance was not the proximate and efficient cause of the damage claimed by the plaintiffs. The amended complaint expressly states that the tenant operated the dump "* * * in such a dangerous and negligent manner that it created a nuisance. * * *" Such negligence was an intervening cause.
The appellants argue that there were issues of fact not resolved and, accordingly, summary judgment should not have been entered. In contradiction of the defendant's denial that it knew that the premises were likely to become a nuisance or were being negligently operated, the plaintiffs specifically charge by affidavit the possibility of notice or knowledge because of the proximity of the defendant's office to the dumping area. However, notice was not a material fact and, therefore, no genuine issue, which would bar the granting of summary judgment, was raised. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
*19 It may be observed that notwithstanding the order under appeal stated it was entered for failure "to set forth a cause of action upon which relief could be granted," sounding in a determination of a motion under R.R. 4:12-2(e), it is clear that the intention of the court was to enter summary judgment on the basis of the pleadings, affidavits and answers to interrogatories, as provided by R.R. 4:58, and that the motion was argued by the parties on that basis.
Affirmed.